1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

JOSHUA LEROY VANCE,

11

Plaintiff,

12

v.

13

ROBIN J. SMITH, KENNETH
SAWYER,

14

Defendants.

15

CASE NO. 2:22-CV-320-BJR-DWC

REPORT AND RECOMMENDATION

Noting Date: June 23, 2023

16    The District Court referred this action, filed pursuant to 42 U.S.C. § 1983, to Chief

17  United States Magistrate Judge David W. Christel. Presently pending before the Court is

18  Defendants Robin J. Smith and Kenneth Sawyer's Motion for Summary Judgment. Dkt. 20.

19  Plaintiff Joshua Leroy Vance alleges Defendants acted with deliberate indifference to his serious

20  medical need. After reviewing the relevant record, the Court finds Plaintiff has failed to rebut

21  Defendants' showing that no genuine issue of material fact remains in this case. Therefore, the

22  Court recommends Defendants' Motion for Summary Judgment (Dkt. 20) be granted and this

23  case be closed.

24

1    **I.    Background**

2        Plaintiff, an inmate housed at the Monroe Correctional Complex – SOU ("MCC"), alleges

3    Defendants Smith and Sawyer violated Plaintiff's Eighth Amendment rights when they delayed in

4    providing information to the Care Review Committee ("CRC") and approving and/or requesting

5    surgery for Plaintiff's hand injury. Dkt. 6. Plaintiff requests injunctive relief and damages.

6        Plaintiff initiated this lawsuit on March 16, 2022. Dkt. 1. Defendants filed the Motion for

7    Summary Judgment on January 30, 2023. Dkts. 20, 21-23 (supporting evidence). Plaintiff filed a

8    Response to the Motion on February 8, 2023. Dkt. 25. Defendants filed their Reply on February

9    24, 2023. Dkt. 26. The Court notified the parties that at least one declaration filed in support of

10   Defendants' Motion for Summary Judgment contained an improper signature. Dkt. 27. Defendants

11   filed the corrected declarations on June 2, 2023. Dkts. 28, 29.

12   **II.    Standard of Review**

13       Summary judgment is proper only if the pleadings, discovery, and disclosure materials on

14   file, and any affidavits, show that there is no genuine dispute as to any material fact and that the

15   movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is

16   entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

17   showing on an essential element of a claim in the case on which the nonmoving party has the

18   burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of

19   fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for

20   the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

21   (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

22   metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a

23   material fact exists if there is sufficient evidence supporting the claimed factual dispute,

24

REPORT AND RECOMMENDATION - 2

1  requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

2  *Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

3  626, 630 (9th Cir. 1987).

4  **III.    Discussion**

5      In the Motion for Summary Judgment, Defendants allege no genuine issue of material fact

6  remains regarding whether Defendants acted with deliberate indifference to Plaintiff's serious

7  medical needs. Dkt. 20.[1]

8      A.  Legal Standard

9      Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary

10  and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation

11  omitted); *see Hudson v. McMillan*, 503 U.S. 1, 6 (1992). An Eighth Amendment medical claim

12  has two elements: (1) "the seriousness of the prisoner's medical need and [(2)] the nature of the

13  defendant's response to that need." *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir. 1991),

14  *overruled on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997) (en

15  banc).

16      A medical need is serious "if the failure to treat the prisoner's condition could result in

17  further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974

18  F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104). "The existence of an injury that a reasonable

19  doctor or patient would find important and worthy of comment or treatment; the presence of a

20  medical condition that significantly affects an individual's daily activities; or the existence of

21

22

23      [1] Defendants also assert Plaintiff's claims are moot and time-barred and that Defendants are entitled to
qualified immunity. Dkt. 20. Plaintiff has failed to present a triable issue of fact regarding the alleged constitutional

24  violations and, therefore, the Court need not discuss Defendants' additional arguments.

chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *Id.* at 1059-1060.

If a plaintiff shows he suffered from a serious medical need, he must then show the prison officials responded to the need with deliberate indifference. *See Farmer*, 511 U.S. at 834. Deliberate indifference to a prisoner's serious medical need requires "a purposeful act or failure to act on the part of the defendant." *McGuckin*, 974 F.2d at 1060. In other words, "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." *Id*. A prison official, accordingly, will not be found deliberately indifferent to a prisoner's serious medical needs "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or [ ] may be shown by the way in which prison physicians provide medical care." *Hutchinson v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1988). If the prison's medical staff is not competent to examine, diagnose, and treat inmates' medical problems, they must "refer prisoners to others who can." *Hoptowit*, 682 F.2d at 1253; *see also Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) (per curiam); *Toussaint v. McCarthy*, 801 F.2d 1080, 1111-12 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

However, "[m]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Hutchinson*, 838 F.2d at 394. The Court also recognizes mere differences of opinion between a prisoner and prison medical staff or

between medical professionals regarding the proper course of treatment does not give rise to a §

1983 claim. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). "[T]o prevail on a claim

involving choices between alternative courses of treatment, a prisoner must show that the chosen

course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in

conscious disregard of an excessive risk to [the prisoner's] health.'" *Id*. (*citing Jackson v.

McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

B. Evidence

In the Amended Complaint, Plaintiff complains of Defendants' conduct beginning January

of 2019.[2] While the record contains evidence prior to January of 2019, any discussion of evidence

prior to January 2, 2019, is for background purposes only.

The evidence shows the Department of Corrections ("DOC") provides medical, mental

health, and dental care to inmates. Dkt. 28, Sawyer Dec., ¶ 4. The care is limited and the DOC uses

the Offender Health Plan ("OHP") to govern the types of care that will be provided. *Id*. Under the

OHP, care is divided into three levels: Level 1 – medically necessary, Level 2 – medically

necessary under certain circumstances, and Level 3 – care that is not medically necessary and not

authorized to be provided. *Id*. The Care Review Committee ("CRC") often considers consultation

requests for treatment that is not clearly defined as Level 1. *Id*. at ¶ 6. "[I]t is common practice for

a provider to bring a case to the CRC which clearly does not meet medical necessity (Level 3)." *Id*.

---

[2] Defendants assert Plaintiff's claims prior to March 16, 2019 are barred by the statute of limitations. Dkt. 20. Plaintiff requests the Court find equitable tolling during the time he was exhausting his administrative remedies related to the January 2019 allegations. Dkt. 6. The Ninth Circuit has held "the applicable statute of limitations period must be tolled while a prisoner completes the mandatory exhaustion process." *Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005). Plaintiff has submitted evidence showing he was engaged in the grievance process related to the January 2, 2019 CRC decision from January 16, 2019 through April 9, 2019. Dkt. 25 at 84-89. Therefore, the Court finds, at this time, Plaintiff has presented sufficient evidence to proceed on any claim beginning on or after January 2, 2019.

1  The CRC is chaired by the Chief Medical Officer and comprised of primary care physicians,

2  Physician Assistants, and Advanced Registered Nurse Practitioners ("ARNP"). *Id*. at ¶ 7. A

3  referring provider will present the case to the committee members by providing a history of the

4  inmate's medical findings along with the proposed intervention. *Id*. The CRC members may ask

5  questions and all final CRC decisions are made based on a simple majority vote of the medical

6  professionals who were a part of the CRC panel and participated in the intervention discussion. *Id*.

7        Defendant Sawyer is a physician 3 (orthopedic specialist) for the Washington State

8  Department of Health and Social Services and provides consultation to the DOC. *Id*. at ¶ 3. He

9  provides orthopedic consultations to various DOC providers, which is done through corresponding

10  solely with the provider or through physical examinations of the offenders. *Id*; *see also* Dkt. 25 at

11  30, 35. Defendant Sawyer only reviewed Plaintiff's records in forming his opinions and making his

12  recommendations. *See* Dkt. 25 at 30, 35. Defendant Smith is a physician assistant-certified/ARNP

13  Lead for the DOC. Dkt. 29, Smith Dec, ¶ 1.

14        In 2012, Plaintiff lost the neurovascular bundle on both sides of his right ring finger and

15  had surgery to the flexor tendons in his right middle, ring, and little fingers. Dkt. 28, Sawyer Dec.

16  ¶¶ 10-11. Plaintiff had "silastic implants placed and was to get follow-up surgery later but was

17  incarcerated." *Id*. at ¶ 11. On March 16, 2018, while in DOC custody, Plaintiff received the follow-

18  up surgery. *Id*. at ¶ 19. Plaintiff received follow-up treatment for his hand. *See id*. at ¶¶ 19-24. The

19  progress notes from a follow-up appointment on September 26, 2018, state that Plaintiff still had

20  poor range of motion of his fingers and Plaintiff and the outside provider discussed further surgery

21  that could help Plaintiff gain active flexion of his middle, ring and small fingers. *Id*. at ¶ 25.

22  Plaintiff agreed to undergo surgery. *Id*.

23

24

On November 8, 2018, Defendant Smith asked Defendant Sawyer to "weigh in on the likelihood that the surgery proposed by Dr. Kennedy would restore significant function to [Plaintiff's] hand." Dkt. 29, Smith Dec., ¶ 9.[3] On November 18, 2018, Defendant Sawyer "provided an assessment as to the likelihood that the proposed surgery . . . would restore significant function." Dkt. 28, Sawyer Dec., ¶ 26. Defendant Sawyer found that whether additional surgery was medically necessary depended on Plaintiff's level of pain and his function. *Id*. Defendant Sawyer "assessed that the 2018 surgery was approved mostly on the basis that it was a completion of a previous staged surgical procedure . . . [and] that if the recently proposed surgery was approved it would have to be on the same basis, since [Plaintiff] had no pain, and is 'very satisfied' with his function." *Id*. Defendant Sawyer found there was a reasonable probability the proposed surgery would improve Plaintiff's function slightly. *Id*. However, the purpose was to eliminate the need for finger splints to correct swan neck deformities and Defendant Sawyer wanted to know why the splints were inadequate to do that. *Id*. Defendant Sawyer noted that, if the proposed procedure failed, another surgery was planned. *Id*.

The CRC was presented with Plaintiff's case on January 2, 2019. *Id*. at ¶ 27. The case synopsis noted that Plaintiff had developed swan neck deformities following surgery in March of 2018. *Id*. Non-party Dr. Kennedy recommended tendon grafts. *Id*. The synopsis also noted Plaintiff's activities of daily living were not affected, there was no evidence of intractable pain, and Plaintiff had been functioning with his condition for five years. *Id*. "The DOC orthopedist stated the complication rate of surgical intervention was high" and "it was unlikely surgery would improve [Plaintiff's] function any more than wearing a splint." *Id*. The CRC discussed Plaintiff's

---

[3] Dr. Kennedy is an outside provider who performed Plaintiff's surgeries and provided consultations. *See* Dkt. 28, Sawyer Dec.

1  case and determined the proposed procedure was not medically necessary and recommended

2  Plaintiff continue to use a Figure 8 splint. *Id.*; *see also* Dkt. 29, Smith Dec., ¶ 12. Defendants

3  Sawyer and Smith were voting members present at the CRC on January 2, 2019. Dkt. 25 at 24-25.

4        On January 10, 2019, Plaintiff met with Defendant Smith to discuss the CRC's decision

5  regarding the proposed orthopedic hand surgery. Dkt. 28, Sawyer Dec., ¶ 28; *see also* Dkt. 28-1 at

6  132. Defendant Smith's notes indicate over-the-counter splints were available to provide comfort

7  and support. Dkt. 28-1 at 132. She also noted Plaintiff did not have pain, just limited range of

8  motion. *Id.* Plaintiff was fitted for finger splints on February 11, 2019. *Id.* at 134.

9        Plaintiff punched a wall on November 29, 2019, dislocating his fingers and fracturing his

10  right hand. Dkt. 28-1 at 136-37; Dkt. 28, Sawyer Dec., ¶ 30-32. Plaintiff was sent to the emergency

11  department and, there, he was given a splint and advised to follow-up with a hand surgeon for

12  evaluation. Dkt. 28, Sawyer Dec., ¶ 32; *see also* Dkt. 28-1 at 143-47. Plaintiff had an appointment

13  with Dr. Kennedy on December 18, 2019. Dkt. 28, Sawyer Dec., ¶ 33; Dkt. 28-1 at 149. Dr.

14  Kennedy opined that treatment without surgery would result in a deformed, chronically painful

15  hand. Dkt. 28-1 at 149. He recommended surgery the next week. *Id.* The treatment notes indicate

16  Plaintiff rated his pain at a 0/10, had normal sensation in the right hand, and noted decreased

17  strength. *Id.* at 150. Plaintiff had surgery on December 27, 2019. *Id.* at 155-57; *see also* Dkt. 28,

18  Sawyer Dec., ¶ 34. Plaintiff was provided with a cast and sling after the surgery and he informed

19  MCC staff that he did not need assistance with activities of daily living. Dkt. 28-1 at 159. He

20  sought assistance to put his splint back on his hand on January 5, 2020. *Id.*

21        Plaintiff was seen on January 9, 2020, because he had removed his splint again. *Id.* at 161.

22  Defendant Smith instructed an MCC staff member to re-wrap Plaintiff's splint and remind Plaintiff

23  not to remove the splint. *Id.* On January 14, 2020, Plaintiff had an appointment at the Harborview

24

Hand Clinic for post-op follow-up. *Id*. at 163. Plaintiff reported his pain was minimal but did note a swan neck deformity of his right middle finger. *Id*. Plaintiff was seen again on January 17, 2020 by an MCC medical staff member. *Id*. at 161. The treatment notes indicate Plaintiff's middle finger appeared locked and Plaintiff was unable to bend or straighten the finger. *Id*.

Plaintiff was treated at the Harborview Hand Clinic for a post-op follow-up appointment on February 26, 2020. *Id*. at 168. Plaintiff was instructed he could his use right hand without limitations following surgery. *Id*. He did complain of discomfort and functional impairment related to his chronic swan neck deformities and the treating provider directed him to return if he received approval for surgery from the DOC. *Id*.

On April 8, 2021, Defendant Smith requested an opinion on the medical necessity of surgery. Dkt. 25 at 100. Defendant Smith noted writing is painful for Plaintiff, Plaintiff has trouble picking things up and drops things. *See id*. Defendant Smith wrote that her plan was to enter another consultation request for surgery. *Id*. Defendant Sawyer provided a consultation on that same date. Dkt. 28, Sawyer Dec., ¶ 40. Defendant Sawyer reviewed his four previous consults and was not convinced Plaintiff would benefit from additional surgery due to his history of non-compliance. *Id*. Defendant Sawyer testified that

> [Plaintiff] was given figure 8 splints for long term use to provide the same benefit as the proposed surgery, namely limiting hyperextension of the PIP joints. There was no reason to think that the splints caused significant pain. There was also no reason why he could not write and perform his activities of daily living with a normal right thumb and index finger. While the proposed surgery may have been appropriate outside of DOC and for a compliant patient, it was my opinion that it was not medically necessary by DOC criteria.

*Id*.

On April 12, 2021, Defendant Smith completed a consultation request, which was submitted to the CRC. Dkt. 28-1 at 175. Defendant Smith proposed surgical intervention for

Plaintiff's chronic swan neck deformities. *Id*. Plaintiff was complaining of pain pulsing up his forearm from his ring and middle fingers with a 5-6/10 pain when he extended his fingers. *Id*. On April 28, 2021, the CRC found the proposed procedure was not medically necessary. *Id*. at 177; *see also* Dkt. 28, Sawyer Dec., ¶ 41. Plaintiff appealed the CRC's decision on July 14, 2021. Dkt. 28, Sawyer Dec., ¶ 43; Dkt. 28-1 at 181. On September 3, 2021, the Headquarters ("HQ") CRC Appeals Committee responded to Plaintiff's appeal; the Committee disagreed with the CRC and authorized the requested surgery. Dkt. 28-1 at 186; Dkt. 28, Sawyer Dec., ¶ 45.

Defendant Smith also recommended Plaintiff be referred to physical/occupational therapy for his right hand due to the swan neck deformities on June 15, 2021. Dkt. 28, Sawyer Dec., ¶ 42; Dkt. 28-1 at 179. Plaintiff had a physical therapy consultation on August 10, 2021. Dkt. 28, Sawyer Dec., ¶ 44; Dkt. 28-1 at 183. The physical therapist's report noted Plaintiff had swan neck deformities in his right middle and ring fingers. Dkt. 28-1 at 183.

> The report noted that position of the joints was improved with the bracing and that with flexion active range of motion his PIP joints tended to extend. The report noted that [Plaintiff] may benefit from an independent home exercise program [(HEP)] of range of motion, stretching and light strengthening. The report noted that the joint position appeared improved with figure 8 splints and that [Plaintiff] may benefit from continuing to use them. [Plaintiff] was instructed in HEP, provided education, and guidance. The provider noted that there was no recommendation for additional skilled therapy at that time.

Dkt. 28, Sawyer Dec., ¶ 44; *see* Dkt. 28-1 at 183.

On September 7, 2021, Defendant Smith submitted another Consultation Request, requesting Plaintiff receive hand surgery. Dkt. 28-1 at 188. She indicated the surgery was designated as Level I – medically necessary. *Id*.; Dkt. 28, Sawyer Dec., ¶ 46. Plaintiff was seen at the Harborview Medical Center for a surgical consultation. Dkt. 28-1 at 190. Plaintiff reported pain and that his problems interfere with his ability to paint. Dkt. 25 at 123. Plaintiff had surgery

1   to correct the swan neck deformities on April 8, 2022. Dkt. 28-1 at 193; Dkt. 28, Sawyer Dec.,

2   ¶48.

3        Plaintiff provided evidence that his hand injuries impacted his ability to write and caused

4   him pain. Dkt. 25 at 147-48 (Baker Dec.), 152-55 (Chen Affidavit). Plaintiff also states Defendant

5   Smith never presented his x-rays to the CRC. *Id*. at 165 (Plaintiff Dec.)

6        Defendant Sawyer testified that his "decisions were made taking into consideration the

7   patient's medical history, risks and benefits of each medical procedure, as well as the patient's

8   noncompliance with medical directives." Dkt. 28, Sawyer Dec., ¶ 54.

9        C.  <u>Analysis</u>

10       In the Amended Complaint, Plaintiff complains that Defendants' delay and failure to

11  authorize surgery constituted deliberate indifference. Dkt. 6. Specifically, Plaintiff alleges

12  Defendants acted with deliberate indifference when (1) Defendants voted "no" at the 2019 CRC

13  meeting; (2) Defendant Smith failed to present Plaintiff's x-rays to the CRC; (3) Defendant Sawyer

14  opined Plaintiff's surgery was not medically necessary without examining Plaintiff; and (4)

15  Defendants actions delayed Plaintiff's surgery. *Id*.

16       1.  CRC Voting Decisions

17       Plaintiff alleges Defendant Smith was deliberately indifferent when she failed to ensure

18  Plaintiff obtained surgery as a voting member of the CRC at the January 2, 2019 CRC meeting.

19  Dkt. 6. Plaintiff contends Defendant Sawyer was also deliberately indifferent when he failed to

20  personally evaluate Plaintiff before voting against Plaintiff's surgery on January 2, 2019.

21       The evidence shows both Defendants Sawyer and Smith were voting members of CRC

22  when the request for surgery, which was presented by Defendant Smith, was denied. The CRC

23  discussed Plaintiff's case and the CRC determined the proposed surgery was not medically

24

1   necessary. There is no record showing how each CRC member voted. *See* Dkt. 29, Smith Dec., ¶

2   6. Thus, there is no evidence showing Defendants voted against the proposed surgical

3   intervention or had any ability to ensure Plaintiff obtained the requested surgery. However, even

4   if both members voted against Plaintiff's surgery, the evidence shows, at most, that Defendants

5   Smith and Sawyer had a difference of opinion from Plaintiff and Dr. Kennedy regarding the

6   proper course of treatment, which is insufficient to show deliberate indifference. Plaintiff's

7   conclusory allegations that Defendants Sawyer and Smith were deliberately indifferent to his

8   serious medical need by voting against the 2019 surgery request is not sufficient to survive

9   summary judgment.

10        2.   Failure to Present X-Rays

11        Plaintiff next contends Defendant Smith acted with deliberate indifference to Plaintiff's

12   serious medical need by failing to present x-rays to the CRC on January 2, 2019 and April 12,

13   2021. Dkt. 6. Plaintiff appears to assert that Defendant Smith's failure to include x-rays delayed

14   his surgery. *See id.*; Dkt. 25. Plaintiff does not provide evidence or even sufficiently allege

15   Defendant Smith's failure to submit x-rays with the January 2019 CRC Report was done

16   intentionally, with deliberate indifference, or that it delayed surgery. *See* Dkts. 6, 25.

17        Moreover, the evidence does not support Plaintiff's assertions. The undisputed evidence

18   shows that, in 2019, Defendant Smith requested Defendant Sawyer "weigh in" on the likelihood

19   that the proposed surgery would restore significant function to Plaintiff's hand. Dkt. 29, Smith

20   Dec., ¶ 9. Defendant Smith presented Plaintiff's case to the CRC. Dkt. 28-1 at 130. The report

21   noted Plaintiff's activities of daily living were not affected, there was no evidence of intractable

22   pain, and the DOC orthopedist stated it was unlikely that surgery would improve Plaintiff's

23   function any more than wearing a splint. *Id*.

24

1    In 2021, Defendant Smith requested an opinion on the medical necessity of surgery, noting

2    Plaintiff had pain and difficulty picking up items and indicating she planned to enter another

3    consultation request for surgery. Dkt. 28-1 at 175. She presented the case to the CRC, and the

4    request was denied because it was not a medical necessity. *Id*. at 177. The CRC report states the

5    procedure was not medically necessary "per Dr. Longano, DCMO." *Id*. There is no evidence

6    showing the 2019 or the 2021 CRC decisions denying surgery would have changed if Defendant

7    Smith included x-rays in the request provided to the CRC, and, thus, there is no evidence showing

8    Defendant Smith's failure to provide x-rays delayed Plaintiff's surgery.

9        3.   Defendant Sawyer's Opinion

10       Plaintiff alleges Defendant Sawyer was deliberately indifferent to Plaintiff's serious

11   medical needs because Defendant Sawyer provided medical opinions regarding Plaintiff's need

12   for surgery without examining Plaintiff. Dkt. 6. Viewing the record in the light most favorable to

13   Plaintiff, Defendant Sawyer offers orthopedic consultations and only reviewed Plaintiff's records

14   in making his recommendations. *See* Dkt. 25 at 30, 35. However, there is no indication he was

15   deliberately indifferent to Plaintiff's serious medical needs when forming his opinions. His

16   "decisions were made taking into consideration [Plaintiff's] medical history, risks and benefits of

17   each medical procedure, as well as [Plaintiff's] noncompliance with medical directives." Dkt. 28,

18   Sawyer Dec., ¶ 54. The medical records indicated Plaintiff had a history of failing to comply with

19   medical directives and with treatment plans following surgeries. *See id*.; *see also* Dkt. 29, Smith

20   Dec., ¶ 15. The medical records also contained information showing Plaintiff was not reporting

21   pain and did not need assistance with activities of daily living. *See e.g.*, Dkt. 28-1 at 132, 150, 159,

22   163. Defendant Sawyer reviewed Plaintiff's medical records and opined that Plaintiff's injuries

23   could be treated with splints. At most, the evidence before the Court shows a difference of opinion

24

1   between Plaintiff and Defendant Sawyer. This is insufficient to overcome Defendants' summary

2   judgment showing. *See Toguchi*, 391 F.3d at 1058.

3           4.   Delay in Medical Treatment

4           Overall, Plaintiff alleges Defendants Smith's and Sawyer's deliberate indifference to

5   Plaintiff's hand injury resulted in a delay in Plaintiff receiving surgery. *See* Dkt. 6. While Plaintiff

6   has presented evidence that he suffered pain and an inability to perform tasks, such as writing,

7   Plaintiff has not overcome Defendants' showing that Defendants Smith and Sawyer did not act

8   with deliberate indifference. The record shows Defendant Smith presented Plaintiff's case to the

9   CRC in 2019 and 2021. The evidence fails to show she delayed in presenting Plaintiff's case to

10  CRC. Rather, Defendant Smith presented Plaintiff's case to the CRC three times, referred Plaintiff

11  to occupational/physical therapy, contacted Plaintiff's treating providers for recommendations, and

12  supplied Plaintiff with splints for his hand. Plaintiff has not provided evidence showing Defendant

13  Smith's action, or in-action, delayed his surgery. Further, the evidence presented to the Court

14  shows Defendant Sawyer reviewed Plaintiff's medical records and responded to requests for

15  consultations and opinions regarding Plaintiff's need for additional hand surgeries. The evidence

16  shows Defendant Sawyer merely formed a different opinion than the opinion Plaintiff and a

17  different medical provider had regarding the appropriate, necessary treatment for Plaintiff's swan

18  neck deformities.

19          Plaintiff has not presented evidence showing Defendants' chosen course of treatment was

20  medically unacceptable under the circumstances and was chosen in conscious disregard of an

21  excessive risk to Plaintiff's health. There is no evidence Defendants failed to administer medically

22  necessary care. Plaintiff's claims amount to no more than a difference regarding his desired course

23  of treatment. Accordingly, his claims against Defendants should be dismissed with prejudice.

24

1    **IV.    Conclusion**

2      Viewing the evidence in the light most favorable to Plaintiff, the Court finds there is no

3    genuine issue of material fact regarding whether Defendants acted with deliberate indifference to

4    Plaintiff's serious medical needs. Therefore, the Court recommends Defendants' Motion for

5    Summary Judgment (Dkt. 20) be granted and this case be closed.

6      Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

7    fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P.

8    6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

9    review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those

10    objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v.*

11    *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

12    imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on June

13    23, 2023, as noted in the caption.

14      Dated this 5th day of June, 2023.

15

16                            

17                    David W. Christel
                Chief United States Magistrate Judge

18

19

20

21

22

23

24